# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **Barton Thorne**, | |
| Plaintiff, | |
| | Case No. _____ |
| v. | |
| **Shelby County Board of Education** and **Dr. Joris M. Ray**, in his official capacity as Superintendent of Shelby County Schools, | COMPLAINT |
| | JURY DEMAND |
| Defendants. | |

## INTRODUCTION

1. Barton Thorne is a career educator who currently serves as principal of Cordova High School for Shelby County Schools (SCS). In his role as principal, he delivers a "principal's message" to his students as part of the weekly announcements' videos. These messages inspire, educate, inform, and challenge his high school students.

2. After the events at the U.S. Capitol on January 6, 2021, our country experienced a teachable moment around the importance of Free Speech and the dangers of cancel culture and deplatforming as social media moderators reacted to

the content of various accounts.[1] Across numerous platforms—Twitter, Facebook, YouTube, Amazon—individual accounts and an entire platform were removed, including the President of the United States and many of his supporters, as well as Parler, a social media application popular among conservatives.

3. Principal Thorne used this teachable moment to talk to his students about the importance of Free Speech in a democratic society, in line with Tennessee's standards for teaching social studies to high school students and in line with generally accepted civics curriculum, including resources recommended by Defendant Dr. Ray for teaching about January 6 and its aftermath.

4. For sharing this message with his students, Principal Thorne was subjected to a professional misconduct complaint and internal disciplinary investigation. SCS placed him on administrative leave, where he has languished for six weeks without any closure to his case. During that time, SCS officials lambasted his message in the news media while telling him to stay silent.

5. SCS's actions violate Principal Thorne's First and Fourteenth Amendment rights by subjecting him to viewpoint discrimination. They further constitute a breach of Principal Thorne's employment contract. They also inflict

---

[1] "Deplatforming" is a term of art to describe when a social media company like Twitter or Facebook removes an account based on the company's standards for moderating access and posting.

intentional and negligent emotional distress and cause him significant reputational damage.

## PARTIES

6. Barton Thorne is principal of SCS's Cordova High School. He lives in Memphis, Shelby County, Tennessee.

7. Shelby County Schools is a municipal public corporation that provides K-12 education to students. Its headquarters are in Memphis, Shelby County, Tennessee.

8. Dr. Joris M. Ray is superintendent of Shelby County Schools. His principal office is in Memphis, Shelby County, Tennessee. He is sued in his official capacity.

## JURISDICTION AND VENUE

9. This case raises claims under the First and Fourteenth Amendments of the United State Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The state-law breach of contract claim is appropriate under the Court's pendent or supplemental jurisdiction because it arises under the same nucleus of facts as the constitutional claim. 28 U.S.C. § 1367.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are located in and a substantial portion of the events giving rise to the claims occurred in the Western District of Tennessee.

## FACTUAL ALLEGATIONS

11. Barton Thorne is a career educator. He has worked for SCS for two decades as a teacher, sports coach, assistant principal, vice principal, and—for the past four years—as principal. He holds a master's in teaching from the University of Memphis and an education specialist degree from Union University. He has been asked to serve on a number of task forces for the SCS and as a mentor to new principals in the district, both of which reflect the professional esteem in which he is held.

12. Cordova High School is the largest high school in SCS, with over 2,200 students. As principal of Cordova High School, Principal Thorne regularly shares a principal's message with his students meant to educate, inspire, inform, and challenge his students with insight and life advice.

13. This message is delivered via a recorded video that is played each Monday during the "homeroom" session of the school day. Previous topics have included thanksgiving, career and professional advice, and talks on character.

14. Principal Thorne's employment as principal of Cordova High School is governed by a contract between him and SCS, which incorporates by reference the "the rules and regulations and policies of the Board."

15. On Monday, January 11, 2021, Principal Thorne delivered a principal's message about the importance of Free Speech in a democratic society and the challenges to this core American freedom in the modern era of social media. The message was played by each teacher as part of the virtual homeroom session for all students within Cordova High School (which is currently in remote learning due to COVID-19). A complete transcript is attached as Exhibit A.

16. Principal Thorne's message was in line with Tennessee's standards for social studies, which instruct educators of high school students to "[d]escribe the protections offered by the Bill of Rights and their changing interpretations within American society; [c]ompare and contrast American civil liberties and protections, as defined by the Bill of Rights, to those of other nations; [and e]xamine factors that influence elections, such as political ideologies, media technologies, social media, societal movements, and other factors." The Standards further lay out that high school aged students should be able to "[a]nalyze how the Bill of Rights limits the powers of the government and ensures individual rights" and "[e]valuate the

Supreme Court's interpretations of the freedoms articulated in the 1st Amendment." Tennessee Social Studies Standards CI.12, CI.13, CI.14, GC.08, GC.23.[2]

17. The State of Tennessee provides by statute that students "shall also be taught the significance and relevance of [our] federal and state foundational documents today…[including h]ow the United States Constitution with the Bill of Rights and the Tennessee Constitution with the Declaration of Rights are applicable in today's society." T.C.A. § 49-6-1028(b)(2).

18. Principal Thorne's statement featured messages similar to those in common teaching resources on the First Amendment and American democracy. *See, e.g.,* Melissa Wantz, Social Media, the Classroom and the First Amendment (Knight Foundation & the Newseum Institute's First Amendment Center) at 25; "The First Amendment: What's Fair in a Free Country?" (EDSITEment! from the National Endowment for the Humanities); "Lesson Plan: Is your Speech Free?" (California Curricula for K-12 Civics Education); "Lesson 5: 'Freedom of Speech…Always Protected?' (Grades 8-12)," U.S. Capitol Historical Society; Greg Timmons, "The dilemma of protecting free speech – Lesson Plan," PBS Newshour (Nov. 5, 2010); "'Marketplace Of Ideas' Concept Defined," Annenberg Classroom at the Univ. of Pennsylvania.

---

[2] Available at https://www.tn.gov/content/dam/tn/education/standards/ss/Social_Studies_Standards.pdf

19. As is evident from the first paragraph of the transcript, Principal Thorne's message was very clear that he was not telling students to conform their believes and values to his. He was encouraging critical thinking about Free Speech, democracy, and how we respond to speech with which we disagree.

20. Shortly thereafter, Dr. Ray, the SCS Superintendent, encouraged SCS educators to address January 6 and its aftermath with students as a "teachable moment about the importance of civility and democracy."

21. Dr. Ray's message to SCS employees included a suggested-resources guide from the SCS Social Studies team. This document directed staff to, among other resources, C-Span Classroom's Constitution Clips, the Free Speech section of which includes a tape of "Panelists discuss[ing] the issue of free speech and governments having the power to shut down social platforms such as Facebook." The SCS Social Studies guide further refers teachers to the National Constitution Center's Interactive Constitution. The NCC's lesson plan for the First Amendment's Free Speech clause challenges teachers to explore with their students, "why is it important to protect speech, even if that speech is unpopular?" In order to create a situation to which students can relate, the NCC lesson plan encourages teachers to structure a debate between students about the importance of Free Speech on social media.

22.  In addition, Dr. Ray's email further recommends that educators look to resources from the New York City Department of Education. The NYC DOE guide directs educators to the NYC "Civics for All" curriculum. The "Civics for All" curriculum's high school manual encourages teachers to address "Civil Liberties include[ing] freedom of speech and association." In particular, the manual's "thematic context for teachers" note directs them to Justice Holmes' "powerful dissenting opinion in *Abrams v. United States* (1919)." There, Justice Holmes writes, "when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas -- that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). In other words, the "marketplace of ideas" that Mr. Thorne discussed in his speech is directly drawn from a teaching resource that the Superintendent recommended as appropriate for helping students think through January 6 and its aftermath.

23.  Following the Principal's message, one or several unknown SCS employees, parents, or students filed a complaint against the Principal.

24. In response to the complaint, SCS placed Principal Thorne on administrative leave the day after his message aired, on January 12, 2021.

25. SCS's disciplinary handbook specifies that administrative leave is appropriate for instances where "the employee may need to be removed from the work place before an investigation can be conducted," and gives as examples "sexual harassment, disorderly conduct, or other situations where the employee presents a potential threat to other employees." Mr. Thorne's comments were pure speech on an educational topic, and in no way are comparable to sexual harassment or instances where students or staff may feel their physical safety is threatened.

26. Nothing in his message was irresponsible or untruthful. SCS Employee Handbook at 10 (Rev. Aug. 2020). *See* SCS BOE Policy 4002. Nothing in his message was obscene, profane, or discourteous. *Id*. at 16-17, 18. Nothing in it was harassing, discriminatory, or intimidating towards students or staff in his building. Id. Nothing in his message violated the Tennessee Code of Teacher Ethics (Tenn. Code Ann. 49-5-1003-1004). *Id*. at 10. Nothing in it was dangerous or disruptive. SCS BOE Policy 4012. Nothing in his remarks constituted incompetence or improper conduct. SCS BOE Policy 4018. Nothing in his message was inappropriate for high school students, who have a greater level of maturity than K-8 students and can handle more advanced and nuanced concepts. In short, nothing in his statement violated his obligations under his contract.

27. SCS disclosed Principal Thorne's suspension to the media, with comments from an SCS board member and an SCS administrator. Numerous Tennessee news media outlets covered the suspension. According to one news report, SCS Board member Sheleah Harris, said the allegations are "extremely unfortunate and do not reflect the true value of" the school or the district.

28. SCS also communicated about Principal Thorne's suspension to SCS colleagues and students.

29. Meanwhile, SCS instructed Principal Thorne to not talk to media, even though the SCS policies permit employees to talk to media in their individual capacity.

30. The Director of SCS's Office of Professional Standards communicated to Principal Thorne that he anticipated prompt dismissal of the complaint because nothing in Principal Thorne's comments violated professional standards or contractual obligations.

31. In spite of this, SCS has left Principal Thorne to linger on administrative leave for over a month with minimal communication and no administrative process for dismissal of the complaint.

32. SCS does not have or enforce any general policy that prevents teachers or other employees from speaking about matters that are political or otherwise of public concern. In fact, SCS permits numerous other SCS administrators and

educators to speak about timely and controversial issues in our democratic society without any condemnation or reprimand.

33. For instance, on June 18, 2020, Dr. Ray tweeted, "Today's #DACA Supreme Court ruling is momentous! We're proud to serve a diverse student population in Shelby County. We will continue to embrace and educate ALL who enter our schools, including our Dreamers, as we move forward to become STRONGER TOGETHER. #WeAre901"

34. For instance, on June 3, 2019, the official account for SCS tweeted, "In honor of #PrideMonth, we celebrate the diversity that makes both our city and schools great. Our LGBTQ+ staff, students, parents, and friends are an important part of who we are and we are proud to call you family. Happy Pride. ❤️ #SCSis901"

35. For instance, on November 17, 2020, immediately after the presidential election, Jerica Phillips, who is identified on her twitter profile as the "chief cheerleader & communications strategist" for SCS, tweeted, "Authoritarianism is a form of government characterized by the rejection of political plurality, the use of a strong central power to preserve the political status quo, and reductions in the rule of law, separation of powers, and democratic voting."

36. For instance, on January 6, 2021, the "strategy and innovation chief" for SCS tweeted:

11



37. For instance, Teresa Floch, a high school teacher for SCS, tweeted on January 13, 2021, "I am tired of all these loud white men telling me I am imagining our abuse." In the middle of the school day on January 20, 2021, inauguration day, she tweeted, "The f'ing sense of relief."

38. For instance, Elizabeth Whitby, a fifth grade teacher for SCS, tweeted on November 7, 2020, that Education Secretary Betsy DeVos's impending departure from office was "Another blessing of the day!" The day after that

inauguration she tweeted:



39.    On information and belief, these tweets are typical of the messages shared by SCS administrators and educators in their classrooms and other communications to students concerning timely topics in social studies.

40.    The foregoing examples are intended to show that other SCS administrators and educators speak about timely topics without facing administrative discipline, while Principal Throne is enduring this investigation and suspension for his speech on a timely topic. The different treatment of his speech from these examples and other instances shows the viewpoint discrimination specific to his speech.

41. While at home unable to work for six weeks, Principal Thorne has endured mental and emotional anguish separated from the job and students he loves.

42. Principal Thorne has seen his professional and personal reputation among his colleagues, students, and other educational employers damaged throughout this ordeal, especially as he has been unable to respond to the charges against him in the media or through a fair hearing process.

## COUNT I

**SCS's punishment of Principal Thorne violates the First Amendment.**

43. "The First Amendment is a kind of Equal Protection Clause for ideas." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2354 (2020) (plurality) (quoting *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 470 (2015) (Scalia, J., dissenting)). A government violates this promise of equal treatment for ideas when it engages in viewpoint discrimination. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995).

44. SCS punished Principal Thorne for his remarks on a timely topic, even though those remarks were in line with Tennessee Social Studies Standards and recommended and commonly accepted teaching resources, while SCS does not punish other employees for their speech on timely or controversial topics.

45. The discriminatory treatment of Principal Thorne's speech compares to the speech of other employees addressing similar topics violates the First Amendment.

46. This violation resulted in impairment of reputation, harm to his professional career, personal humiliation, mental anguish, and emotional distress and stemmed from an evil motive or callous indifference to Principal Thorne's rights. *See Westerfield v. United States*, 483 F. App'x 950, 956 (6th Cir. 2012).

## COUNT II

### Punishing Principal Thorne and placing him on administrative leave breaches his contract with SCS.

47. The allegations contained in all preceding paragraphs are incorporated herein by reference.

48. Principal Thorne is being punished even though nothing he said violated his contractual obligations as spelled out in SCS's handbook.

49. Principal Thorne is being punished on administrative leave even though nothing he said creates a situation that justifies administrative leave as spelled out in SCS's handbook.

50. Principal Thorne has been left on administrative leave for six weeks-- in violation of the prompt administrative resolution based in SCS's handbook.

51. This breach of contract has resulted in emotional distress and harm to reputation and was based on reckless and malicious motives. *See Reinhart v. Knight*,

No. M2004-02828-COA-R3-CV, 2005 Tenn. App. LEXIS 753, at *13 (Ct. App. Dec. 2, 2005) and *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.14 (Tenn. 2012).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

    a.    Declare that the Shelby County Board of Education and Superintendent Ray violated the First Amendment when they suspended Principal Thorne; and

    b.    Declare that the Shelby County Board of Education and Superintendent Ray breached their contract with Principal Thorne, as embodied in SCS's handbooks and policies; and

    c.    Award Principal Thorne compensatory, nominal, and punitive damages for these violations; and

    d.    Award Plaintiff his costs and attorneys' fees under 42 U.S.C. § 1988; and

    e.    Award any further relief to which Plaintiff may be entitled.

Dated: February 25, 2021

        Daniel R. Suhr (WI No. 1056658)*
        Liberty Justice Center
        Chicago, Illinois 60603
        Ph.: 312/263-7668
        Email: dsuhr@libertyjusticecenter.org
        *Lead Counsel for Plaintiff*
        *\* Pro Hac Vice Motion Forthcoming*

        /s/ Cameron M. Watson
        Cameron M. Watson (TN No. 33613)
        SPICER RUDSTROM, PLLC
        119 S. Main Street, Suite 700
        Memphis, Tennessee 38103
        office:  901.523.1333
        fax:     901.526.0213
        direct:  901.522.2319
        email:  cwatson@spicerfirm.com