## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

---

**Barton Thorne**,

      Plaintiff,

v.

**Shelby County Board of Education** and **Dr. Joris M. Ray**, in his official capacity as Superintendent of Shelby County Schools,

      Defendants.

Case No. 2:21-cv-02110-MSN-tmp

FIRST AMENDED COMPLAINT

JURY DEMAND

**Pursuant to F.R.C.P. 15(a), Plaintiff files this amended complaint as of right:**

### INTRODUCTION

1.     Barton Thorne is a career educator who currently serves as principal of Cordova High School for Shelby County Schools (SCS). In his role as principal, he delivers a "principal's message" to his students as part of the weekly announcements' videos. These messages inspire, educate, inform, and challenge his high school students.

2.     After the events at the U.S. Capitol on January 6, 2021, our country experienced a teachable moment around the importance of free speech and the dangers of cancel culture and deplatforming as social media moderators reacted to

the content of various accounts.[1] Across numerous platforms—Twitter, Facebook, YouTube, Amazon—individual accounts and an entire platform were removed, including the President of the United States and many of his supporters, as well as Parler, a social media application popular among conservatives.

3.      Principal Thorne used this teachable moment to talk to his students about the importance of free speech in a democratic society, in line with Tennessee's standards for teaching social studies to high school students and in line with generally accepted civics curriculum, including resources recommended by Defendant Dr. Ray for teaching about January 6 and its aftermath.

4.      For sharing this message with his students, Principal Thorne was subjected to a professional misconduct complaint and internal disciplinary investigation. SCS placed him on administrative leave, where he languished for six weeks without any closure to his case. During that time, SCS officials lambasted him in the news media while telling him to stay silent.

5.      SCS's actions violate Principal Thorne's First and Fourteenth Amendment rights because SCS failed to give him fair notice that his speech was prohibited, it failed to adopt a sufficiently definite policy that became an invitation to arbitrary enforcement, and it subjected him to viewpoint discrimination for his

---

[1] "Deplatforming" is a term of art to describe when a social media company like Twitter or Facebook removes an account based on the company's standards for moderating access and posting.

speech in a nonpublic forum in violation of his academic freedom. These actions further constitute a breach of Principal Thorne's employment contract. They also inflicted intentional and negligent emotional distress and caused him significant reputational damage.

## PARTIES

6.     Barton Thorne is principal of SCS's Cordova High School. He lives in Memphis, Shelby County, Tennessee.

7.     Shelby County Schools is a municipal public corporation that provides K-12 education to students. Its headquarters are in Memphis, Shelby County, Tennessee.

8.     Dr. Joris M. Ray is superintendent of Shelby County Schools. His principal office is in Memphis, Shelby County, Tennessee. He is sued in his official capacity.

## JURISDICTION AND VENUE

9.     This case raises claims under the First and Fourteenth Amendments of the United State Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The state-law breach of contract claim is appropriate under the Court's pendent or supplemental jurisdiction because it arises under the same nucleus of facts as the constitutional claims. 28 U.S.C. § 1367.

10.     Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are located in and a substantial portion of the events giving rise to the claims occurred in the Western District of Tennessee.

## FACTUAL ALLEGATIONS

11.     Barton Thorne is a career educator. He has worked for SCS for two decades as a teacher, sports coach, assistant principal, vice principal, and—for the past four years—as principal. He holds a master's in teaching from the University of Memphis and an education specialist degree from Union University. He has been asked to serve on a number of task forces for SCS and as a mentor to new principals in the district, both of which reflect the professional esteem in which he is held.

12.     Principal Thorne's employment as principal of Cordova High School is governed by a contract between him and SCS. SCS uses a standard contract for all its principal-level employees, a copy of which is attached as Exhibit A.

13.     Section 2 of the contract states, "It is understood and agreed that Principal/Assistant Principal shall perform the duties of Principal/Assistant Principal at [Cordova High School] (School) in accordance with the laws and rules and regulations of the State of Tennessee, the rules and regulations and policies of the Board, and in accordance with any amendments to said statutes, rules, regulations that may become effective during the period of this Contract."

14.     Section 3 of the contract states, "It is understood and agreed that Principal/Assistant Principal shall be evaluated in accordance with Board evaluation guidelines and existing State of Tennessee statutes and regulations."

15.     Section 7 of the contract states, "It is understood and agreed that the superintendent and/or the Principal's/Assistant Principal's immediate supervisor have the right to direct and control the Principal's/Assistant Principal's employment with the Board. Principal/Assistant Principal acknowledges, therefore, that it may be necessary from time to time for the superintendent or his or her designee to discipline the Principal/Assistant Principal."

16.     Section 8 of the contract states, "Principal/Assistant Principal has read and understood the Board's policy prohibiting harassment and discrimination in the workplace. Principal/Assistant Principal understands that the Board neither tolerates nor condones illegal harassment or discrimination and will investigate and correct any such harassment or discrimination that is brought to its attention."

17.     Section 12 of the contract states, "Both the Superintendent and Principal/Assistant Principal understand and agree that this contract is subject to the laws of the State of Tennessee and the policies of the Board."

18.     Section 12 of the contract also states, "I understand that violation of any Board contract or policy can subject me to disciplinary action up to and including termination."

19.     SCS states on its website that the Employee Handbook "outlines the expected relationship between our valued team members and the District. Ultimately it is our employees' playbook to understand the District's expectations and what they can expect as employees of SCS."[2]

20.     SCS's Employee Handbook says, "Disciplinary action, including the immediate physical removal of an employee from his or her work site, will follow thoughtful consideration of an employee's misconduct and its impact on the school/District." (pg. 8).[3]

21.     SCS's Employee Handbook states that SCS will file a report with the State Board of Education any time an employee is placed on administrative leave, "regardless of whether the allegations are substantiated at the time." (underline original) (pg. 11). SCS's reporting of Principal Thorne to the SBE further diminishes his professional reputation and endangers his licensure as a principal.

22.     SCS's handbook states that "Personnel records are maintained for all employees and are considered to be public records; this means that anyone can request to see an employee's personnel file and the file must be made readily available for viewing—the consent of the employee is not required." The file includes "Documents relating to disciplinary action." (pg. 27).

---

[2] Available online at http://www.scsk12.org/hr2/page?PID=1741&PN=Staff%20Ethics%20Policy&DID=249.
[3] Available online at
https://www.scsk12.org/employee/files/2020/SCS%20Handbook%202020%20Color%20Revised.pdf.

23.     SCS's handbook also states that "[a]llegations of harassment shall be promptly and fully investigated." (pg. 19).  In fact, the handbook promises, "The investigation and response to the complainant will be completed within 20 business days." *Id*.

24.     SCS's employee handbook further states that "Disciplinary action, including the immediate physical removal of an employee from his or her work site, will follow thoughtful consideration of an employee's misconduct and its impact on the school/District."

25.     SCS Board Policy 4050 states, "the District views the principal as the chief academic and operational officer of the school, and authorizes the principal to make management decisions within the school unit that are consistent with law and SCS Board policy."[4]

26.     SCS's "Guidelines for Progressive Discipline" handbook states that administrative leave with pay is limited to those "situations where the employee may need to be removed from the work place before an investigation can be conducted," such as "sexual harassment, disorderly conduct, or other situations where the employee presents a potential threat to other employees." (pg. 5).[5]  The discipline handbook further refers to administrative leave as a "suspension." (*Id*.).

---

[4] Available online at http://www.scsk12.org/Policy_Manual/pm/4000/4050_Effective_School_Leadership.pdf.
[5] Available online at
https://www.scsk12.org/askhr/files/2017/Labor%20Relations%20forms/SCS%20Progressive%20Discipline%20Pro
cedures%20Guide%208-18-17.doc.

27.     Cordova High School is the largest high school in SCS, with over 2,200 students. As principal of Cordova High School, Principal Thorne regularly shares a principal's message with his students meant to educate, inspire, inform, and challenge his students with insight and life advice.

28.     This message is delivered via a recorded video that is played each Monday during the "homeroom" session of the school day. Previous topics have included thanksgiving, career and professional advice, and talks on character.

29.     On Monday, January 11, 2021, Principal Thorne delivered a principal's message about the importance of free speech in a democratic society and the challenges to this core American freedom in the modern era of social media. The message was played by each teacher as part of the virtual homeroom session for all students within Cordova High School (which is currently in remote learning due to COVID-19). A complete transcript is attached as Exhibit B.

30.     Principal Thorne's message was in line with Tennessee's standards for social studies, which instruct educators of high school students to "[d]escribe the protections offered by the Bill of Rights and their changing interpretations within American society; [c]ompare and contrast American civil liberties and protections, as defined by the Bill of Rights, to those of other nations; [and e]xamine factors that influence elections, such as political ideologies, media technologies, social media, societal movements, and other factors." The Standards further lay out that high

school aged students should be able to "[a]nalyze how the Bill of Rights limits the powers of the government and ensures individual rights" and "[e]valuate the Supreme Court's interpretations of the freedoms articulated in the 1st Amendment." Tennessee Social Studies Standards CI.12, CI.13, CI.14, GC.08, GC.23.[6]

31.     The State of Tennessee provides by statute that students "shall also be taught the significance and relevance of [our] federal and state foundational documents today…[including h]ow the United States Constitution with the Bill of Rights and the Tennessee Constitution with the Declaration of Rights are applicable in today's society." T.C.A. § 49-6-1028(b)(2).

32.     Principal Thorne's statement featured messages similar to those in common teaching resources on the First Amendment and American democracy. *See, e.g.,* Melissa Wantz, Social Media, the Classroom and the First Amendment (Knight Foundation & the Newseum Institute's First Amendment Center) at 25; "The First Amendment: What's Fair in a Free Country?" (EDSITEment! from the National Endowment for the Humanities); "Lesson Plan: Is your Speech Free?" (California Curricula for K-12 Civics Education); "Lesson 5: 'Freedom of Speech…Always Protected?' (Grades 8-12)," U.S. Capitol Historical Society; Greg Timmons, "The dilemma of protecting free speech – Lesson Plan," PBS Newshour (Nov. 5, 2010);

---

[66] Available at https://www.tn.gov/content/dam/tn/education/standards/ss/Social_Studies_Standards.pdf

"'Marketplace Of Ideas' Concept Defined," Annenberg Classroom at the Univ. of Pennsylvania.

33.    As is evident from the first paragraph of the transcript, Principal Thorne's message was very clear that he was not telling students to conform their believes and values to his. He was encouraging critical thinking about free speech, democracy, and how we respond to speech with which we disagree.

34.    Shortly thereafter, Dr. Ray, the SCS Superintendent, encouraged SCS educators to address January 6 and its aftermath with students as a "teachable moment about the importance of civility and democracy."

35.    Dr. Ray's message to SCS employees included a suggested-resources guide from the SCS Social Studies team. This document directed staff to, among other resources, C-Span Classroom's Constitution Clips, the free speech section of which includes a tape of "Panelists discuss[ing] the issue of free speech and governments having the power to shut down social platforms such as Facebook." The SCS Social Studies guide further refers teachers to the National Constitution Center's Interactive Constitution. The NCC's lesson plan for the First Amendment's free speech clause challenges teachers to explore with their students, "why is it important to protect speech, even if that speech is unpopular?" In order to create a situation to which students can relate, the NCC lesson plan encourages teachers to

structure a debate between students about the importance of free speech on social media.

36.     In addition, Dr. Ray's email further recommends that educators look to resources from the New York City Department of Education. The NYC DOE guide directs educators to the NYC "Civics for All" curriculum. The "Civics for All" curriculum's high school manual encourages teachers to address "Civil Liberties includ[ing] freedom of speech and association." In particular, the manual's "thematic context for teachers" note directs them to Justice Holmes' "powerful dissenting opinion in *Abrams v. United States* (1919)." There, Justice Holmes writes, "when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas -- that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). In other words, the "marketplace of ideas" that Mr. Thorne discussed in his speech is directly drawn from a teaching resource that the Superintendent recommended as appropriate for helping students think through January 6 and its aftermath.

37.     Following the Principal's message, one or several unknown SCS employees, parents, or students filed a complaint against the Principal.

38.     In response to the complaint, SCS placed Principal Thorne on administrative leave the day after his message aired, on January 12, 2021.

39.     Nothing in his message was irresponsible or untruthful. SCS Employee Handbook at 10 (Rev. Aug. 2020). *See* SCS BOE Policy 4002. Nothing in his message was obscene, profane, or discourteous. *Id*. at 16-17, 18. Nothing in it was harassing, discriminatory, or intimidating towards students or staff in his building. *Id*. Nothing in his message violated the Tennessee Code of Teacher Ethics (Tenn. Code Ann. 49-5-1003-1004). *Id*. at 10. Nothing in it was dangerous or disruptive. SCS BOE Policy 4012. Nothing in his remarks constituted incompetence or improper conduct. SCS BOE Policy 4018. Nothing in his message was inappropriate for high school students, who have a greater level of maturity than K-8 students and can handle more advanced and nuanced concepts. In short, nothing in his statement violated his obligations under his contract. SCS suspended him anyway.

40.     SCS disclosed Principal Thorne's suspension to the media, with on-the-record statements from an SCS board member and an SCS administrator. Numerous Tennessee news media outlets covered the suspension. According to one news report, SCS Board member Sheleah Harris said the allegations are "extremely unfortunate and do not reflect the true value of" the school or the district.

41.    In a news report from a local TV station, Michael Lowe, director of the SCS Office of Equity and Access, was quoted as saying, "Emotionally charged situations, we have to sometimes temper back, recalibrate, think about the message we're sending to our student. Because Cordova is like the City of Memphis, it's made up of a salad bowl of many different students of all areas of Memphis."

42.    SCS also communicated about Principal Thorne's suspension to SCS colleagues and students.

43.    Meanwhile, SCS instructed Principal Thorne to not talk to media, even though the SCS policies permit employees to talk to media in their individual capacity.

44.    The Director of SCS's Office of Professional Standards communicated to Principal Thorne that he anticipated prompt dismissal of the complaint because nothing in Principal Thorne's comments violated professional standards or contractual obligations.

45.    Principal Thorne received a second call from the SCS Office of Professional Standards saying the complaint would be resolved almost immediately when it came up in the queue, which would be within a week.

46.    He later received a third call from the SCS Office of Professional Standards saying the complaint had been removed from OPS and that the Superintendent's office had taken direct control of the matter.

47.    SCS left Principal Thorne to linger on administrative leave for over a month with minimal communication and no visible progress on administrative process for dismissal of the complaint.

48.    SCS does not have or enforce any general policy that prevents teachers or other employees from speaking about matters that are political or otherwise of public concern. In fact, SCS permits numerous other SCS administrators and educators to speak about timely and controversial issues in our democratic society without any condemnation or reprimand.

49.    For instance, on June 18, 2020, Dr. Ray tweeted, "Today's #DACA Supreme Court ruling is momentous! We're proud to serve a diverse student population in Shelby County. We will continue to embrace and educate ALL who enter our schools, including our Dreamers, as we move forward to become STRONGER TOGETHER. #WeAre901"

50.    For instance, on June 3, 2019, the official account for SCS tweeted, "In honor of #PrideMonth, we celebrate the diversity that makes both our city and schools great. Our LGBTQ+ staff, students, parents, and friends are an important part of who we are and we are proud to call you family. Happy Pride. ❤ #SCSis901"

51.    For instance, on November 17, 2020, immediately after the presidential election, Jerica Phillips, who is identified on her Twitter profile as the "chief

14

cheerleader & communications strategist" for SCS, tweeted, "Authoritarianism is a form of government characterized by the rejection of political plurality, the use of a strong central power to preserve the political status quo, and reductions in the rule of law, separation of powers, and democratic voting."

52.     For instance, on January 6, 2021, the "strategy and innovation chief" for SCS tweeted:



53.     For instance, Teresa Floch, a high school teacher for SCS, tweeted on January 13, 2021, "I am tired of all these loud white men telling me I am imagining our abuse." In the middle of the school day on January 20, 2021, inauguration day, she tweeted, "The f'ing sense of relief."

54.     For instance, Elizabeth Whitby, a fifth grade teacher for SCS, tweeted on November 7, 2020, that Education Secretary Betsy DeVos's impending departure from office was "Another blessing of the day!" The day after that inauguration she tweeted:



55.    On information and belief, these tweets are typical of the messages shared by SCS administrators and educators in their classrooms and other communications to students concerning timely topics in social studies.

56.    The foregoing examples are intended to show that other SCS administrators and educators speak about timely topics without facing administrative discipline, while Principal Throne was suspended and investigated and maligned for his speech on a timely topic. The different treatment of his speech from these examples and other instances shows the viewpoint discrimination specific to his speech.

57.    While at home unable to work, Principal Throne endured mental and emotional anguish separated from the job and students he loves.

58.     Principal Thorne has seen his professional and personal reputation among his colleagues, students, and other educational employers damaged throughout this ordeal, especially as he was unable to respond to the charges against him in the media or through a fair hearing process.

59.     When this lawsuit was filed, Principal Thorne was reinstated to his job by SCS the very same day.

60.     SCS issued a reinstatement letter to Principal Thorne that did not state that his conduct was acceptable or that apologized for his suspension. Instead, the letter said that though discipline was not warranted, Principal Thorne was "advised to be mindful of how remarks in your capacity as principal may affect school staff and students." The letter further "encourage[s him] to participate in professional development on methods to ensure the school environment remains optimal for student learning." The letter is permanently placed in his personnel file.

61.     From his suspension to his reinstatement was over six weeks, and the supposed investigation miraculously ended the day this lawsuit was filed.

## COUNT I

**SCS's suspension of Principal Thorne violates the Fourteenth Amendment's due process clause because it is based on policies that are void for vagueness. The policies failed to give fair notice to Principal Thorne of prohibited conduct and empowered officials to act arbitrarily with unfettered discretion.**

62.     *Fair notice*. "A vague ordinance denies fair notice of the standard of conduct to which a citizen is held accountable." *Dambrot v. Cent. Mich. Univ.*, 55

17

F.3d 1177, 1183 (6th Cir. 1995) (citation omitted). A public employer's discipline of an employee also must provide fair notice and the policy on which such discipline is based may be void for vagueness. *Id*. When a state or local government policy does not provide fair notice, it violates the procedural due process guarantee of the Fourteenth Amendment. *Id*.

63.    Principal Thorne's speech was in line with Tennessee Social Studies Standards, generally accepted curriculum for high school civics and social studies, and the resources recommended by Dr. Ray after January 6.

64.    SCS did not provide Principal Thorne with any prior notice or reason to think that his speech about free speech fell outside SCS policies or curriculum.

65.    SCS's policies concerning irresponsible, untruthful, obscene, profane, discourteous, harassing, discriminatory, intimidating, dangerous, disruptive, incompetent, or improper speech or conduct did not adequately put Principal Thorne on notice that his speech about free speech violated any of these policies.

66.    A reasonable person would not interpret Principal Thorne's speech or conduct to be irresponsible, untruthful, obscene, profane, discourteous, harassing, discriminatory, intimidating, dangerous, disruptive, incompetent, or improper.

67.    *Unrestricted delegation.* A government policy is also void for vagueness when it "is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary,

18

discriminatory and overzealous enforcement." *Id.* Such a policy also violates the procedural due process guarantee of the Fourteenth Amendment.

68.    SCS's use of policies barring speech or conduct that is irresponsible, untruthful, obscene, profane, discourteous, harassing, discriminatory, intimidating, dangerous, disruptive, incompetent, or improper are so vague as applied to this circumstance that they granted virtually limitless power to Dr. Ray and other SCS administrators to suspend Principal Thorne arbitrarily and discriminatorily.

69.    The suspension, investigation, and negative public comments toward Principal Thorne based on these void-for-vagueness policies deprived him of liberty and property, impaired his personal and professional reputation, harmed his professional career, caused him mental anguish and emotional distress, constituted an adverse employment action, and stemmed from an evil motive or callous indifference to Principal Thorne's rights. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 302 (1986).

70.    SCS and Dr. Ray's acts were undertaken in their official capacities under color of state law.

## <u>COUNT II</u>

**SCS's suspension of Principal Thorne violates the First Amendment because it is viewpoint discrimination in a nonpublic forum, because it is based on policies that are void for vagueness, and because it violated his academic freedom by punishing him for using appropriate curriculum.**

71.     *Viewpoint discrimination.* Speech by Principal Thorne during his principal's weekly video message is properly categorized as speech in a nonpublic forum for First Amendment purposes. *Ward v. Hickey*, 996 F.2d 448, 453 (1st Cir. 1993).

72.     By permitting Principal Thorne and other principals to share their views with students within their schools, SCS has chosen to create a nonpublic forum for their expression. SCS is not obligated to create a nonpublic forum for Principal Thorne to share his views. And having done so, SCS may adopt reasonable regulations to define the scope of acceptable speech within the forum. But SCS may not engage in viewpoint discrimination in administering the forum. *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 493 (6th Cir. 2020).

73.     In this instance, SCS permits other teachers to engage in speech on public issues within their classrooms. SCS permits other principals to engage in speech on public issues in their messages to students. And SCS permits administrators to engage in speech on public issues in their messages to students and the public. Only in this instance has SCS retaliated against one principal's speech on a public issue by suspending and investigating him. This constitutes illegal viewpoint discrimination.

74.     *Void for vagueness.* Under the First Amendment, speakers are protected from arbitrary and discriminatory enforcement of vague standards. *See United Food*

*& Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 358-59 (6th Cir. 1998).

75.     For the reasons cited above, SCS's policies were vague standards that failed to provide Principal Thorne with fair notice about appropriate speech.

76.     SCS's policies were so vague that they led to arbitrary and discriminatory enforcement against Principal Thorne.

77.     *Academic freedom*. Federal courts take different approaches to the academic freedom of high school teachers, even after *Garcetti v. Ceballos,* 547 U.S. 410 (2006). Though the Sixth Circuit recognizes the right of school boards to control the curricular content of teachers, the Sixth Circuit also recognizes the academic freedom of teachers to teach. *See Meriwether v. Hartop*, No. 20-3289, 2021 U.S. App. LEXIS 8876 (6th Cir. Mar. 26, 2021).

78.     Under the *Pickering* analysis used in *Meriwether,* Principal Thorne clearly spoke on an issue of public concern, and his interest in doing so exceeded the District's interest in the efficiency of the public services it performs through him.

79.     *Academic freedom – fair notice.* Regardless of the level of control SCS may exercise beforehand over the curricular speech of its employees, the First Amendment protects them from punishment after curricular speech if they were not give fair notice that their curricular speech was unacceptable to their school district. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284 (1977);

*Stachura v. Truszkowski*, 763 F.2d 211, 215 (6th Cir. 1985), *rev'd on other grounds*, 477 U.S. 299 (1986); *Ward v. Hickey*, 996 F.2d 448, 453 (1st Cir. 1993).

80.    Based on existing regulations, policies, and curricular standards, Principal Thorne would not have been on notice that his speech violated SCS policy or curricular standards.

81.    These violations of Principal Thorne's rights resulted in impairment of reputation, harm to his professional career, personal humiliation, mental anguish, and emotional distress and stemmed from an evil motive or callous indifference to Principal Thorne's rights. *See Westerfield v. United States*, 483 F. App'x 950, 956 (6th Cir. 2012).

82.    SCS and Dr. Ray's acts were undertaken in their official capacities under color of state law.

## **COUNT III**

**Punishing Principal Thorne with an adverse employment action breaches SCS's contract with him.**

83.    Section 2 of SCS's contract with Principal Thorne states that he shall perform "in accordance with the laws and rules and regulations of the State of Tennessee, the rules and regulations and policies of the Board." He did so when teaching his students about free speech in line with Tennessee Social Studies Standards and SCS curricular guidance.

84.     Section 7 of SCS's contract with Principal Thorne states "the superintendent and/or the Principal's/Assistant Principal's immediate supervisor have the right to direct and control the Principal's/Assistant Principal's employment with the Board." SCS gave Principal Thorne no prior notice that it was directing or controlling his employment by barring him from discussing free speech in a school setting.

85.     Section 8 of SCS's contract binds Principal Thorne to follow SCS's policy on discrimination and harassment. What Principal Thorne said was not discriminatory or harassing, and Principal Thorne did not have prior notice that what he said would be considered potentially discriminatory or harassing.

86.     Section 12 of the contract limits disciplinary action to "violation of any Board contract or policy." Principal Thorne's statements in no way constituted a violation of any Board contract or policy.

87.     In fact, SCS Board policy 4050 states, "the District views the principal as the chief academic and operational officer of the school, and authorizes the principal to make management decisions within the school unit that are consistent with law and SCS Board policy." Principal Thorne's statements in his video messages were part of his role as the chief academic officer of the school, which SCS has authorized and entrusted him to run.

88.     Further, the SCS discipline handbook limits administrative leave to "situations where the employee presents a potential threat to other employees." Principal Thorne's pure educational speech did not present any possible potential threat to other employees or students, and the District severely damaged his personal and professional reputation by placing him suspending him in violation of the standards set by the District's own handbook.

89.     The SCS employee handbook promises that alleged "harassment" will be investigated "promptly" and that cases will be resolved within 20 business days. Principal Thorne's case was not being investigated promptly and he was left to linger on administrative leave beyond 20 business days.

90.     SCS's employee handbook also promises that "immediate physical removal of an employee from his or her work site," which the handbook describes as "disciplinary action," "will follow thoughtful consideration of an employee's misconduct and its impact on the school/District." Principal Thorne's immediate physical suspension from his school was not the result of thoughtful consideration, did not follow any employee misconduct, and was made much worse by one-sided media statements by SCS representatives.

91.     Principal Thorne was suspended, investigated, and insulted even though nothing he said violated his contractual obligations as spelled out in SCS's

rules, regulations, or policies. In fact, he was suspended for complying with the curricular standards of SCS and the State of Tennessee.

92.     Principal Thorne was suspended and investigated even though nothing he said creates a situation that justifies administrative leave as spelled out in SCS's disciplinary handbook.

93.     Principal Thorne was left to languish on administrative leave for almost two months with minimal actual investigation.

94.     Principal Thorne never did anything to breach his obligations to SCS, but SCS breached its obligations to him anyway by putting him through this ordeal without justification under the terms of the contract.

95.     This adverse employment action constituted a breach of contract and has resulted in emotional distress and harm to reputation and was based on reckless and malicious motives. *See Reinhart v. Knight*, No. M2004-02828-COA-R3-CV, 2005 Tenn. App. LEXIS 753, at *13 (Ct. App. Dec. 2, 2005) and *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.14 (Tenn. 2012).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a.     Declare that the Shelby County Board of Education and Superintendent Ray violated the Fourteenth Amendment when they suspended Principal Thorne; and

b.      Declare that the Shelby County Board of Education and Superintendent Ray violated the First Amendment when they suspended Principal Thorne; and

c.      Declare that the Shelby County Board of Education and Superintendent Ray breached their contract with Principal Thorne, as embodied in his contract, state law, and SCS's rules and regulations; and

d.      Enter an injunction ordering Dr. Ray to remove the reinstatement letter from Principal Thorne's personnel file; and

e.      Award Principal Thorne compensatory, nominal, and punitive damages for these violations; and

f.      Award Plaintiff his costs and attorneys' fees under 42 U.S.C. § 1988; and

g.      Award any further relief to which Plaintiff may be entitled.

Dated: April 2, 2021

> Daniel R. Suhr (WI No. 1056658)*
> Liberty Justice Center
> Chicago, Illinois 60603
> Ph.: 312/263-7668
> Email: dsuhr@libertyjusticecenter.org
> *Lead Counsel for Plaintiff*
> *\* Pro Hac Vice Motion Forthcoming*

/s/ Cameron M. Watson
Cameron M. Watson
SPICER RUDSTROM, PLLC
119 S. Main Street, Suite 700
Memphis, Tennessee 38103
office:  901.523.1333
fax:     901.526.0213
direct:  901.522.2319
email:  cwatson@spicerfirm.com