1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

BARTON THORNE,

     Plaintiff,

vs.                                    NO. 2:21-cv-02110


SHELBY COUNTY BOARD OF EDUCATION and DR. JORIS M. RAY, in his

official capacity as Superintendent of Shelby County

Schools,,

     Defendants.

_____




TRANSCRIPT OF

STATUS CONFERENCE

BEFORE THE HONORABLE MARK S. NORRIS, JUDGE


FRIDAY

APRIL 11, 2025



LASHAWN MARSHALL, RPR, RMR
OFFICIAL COURT REPORTER
167 NORTH MAIN STREET - SUITE 242
MEMPHIS, TENNESSEE 38103

*UNREDACTED TRANSCRIPT*

1                    **A P P E A R A N C E S**

2

3

4

5  **Appearing on behalf of the Plaintiff:**

6              MR. CAMERON M. WATSON (via telephone)
             Attorney at Law
7              Law Office of Spicer Rudstrom
             6060 Primacy Parkway
8              Suite 401
             Memphis, Tennessee  38119
9              Phone: (901) 523-1333

10

             MR. DEAN McGEE
11             MS. BRIDGET CONLAN (via telephone)
             Attorneys at Law
12             LIBERTY JUSTICE CENTER
             7500 Rialto Boulevard
13             Suite 1-250
             Austin, Texas  78735
14             Phone: (512) 418-4400

15

16  **Appearing on behalf of the Defendants:**

17             MS. JAMIE MORTON
             Attorney at Law
18             SHELBY COUNTY BOARD OF EDUCATION
             Office of General Counsel
19             160 South Hollywood Street, Room 218
             Memphis, Tennessee  38112
20             Phone: (901) 416-6370

21

22

23

24

25

*UNREDACTED  TRANSCRIPT*

1                              FRIDAY

2                        April 11, 2025

3

4        The STATUS CONFERENCE in this case began on this date,

5   Friday, April 11, 2025, at 9:58 a.m., when and where the

6   proceedings were had as follows:

7

8                    -------------------------

9

10            **THE COURT:**  And while we're reviewing the lineup,

11   I see what I'd not seen before -- yesterday -- notice of

12   appearance by Newton Anderson.

13            **MR. McGEE:**  Your Honor, I can explain that, if

14   you'd like.

15            **THE COURT:**  All right.  Thank you, Mr. McGee.

16            **MR. McGEE:**  I flew in this morning, and uncertain

17   whether I would make it here on time, Newton filed a notice

18   of appearance, just in case he had to substitute in for me

19   last minute.

20            **THE COURT:**  All right.  Mr. McGee, thank you.

21            All right.  It's 10 o'clock somewhere.  The

22   courtroom clock is a few minutes before 10:00, but the

23   computer says 10:00 a.m., and we're set for a status

24   conference, Rule 16 conference, in Barton Thorne versus

25   Shelby County Board of Education and whomever is the latest

*UNREDACTED  TRANSCRIPT*

4

1  superintendent.  I know the defense takes the position that

2  it doesn't really matter; it's all the same.  But I know

3  there's also a motion pending to add -- is this our fourth?

4  The case is five years old, and I think -- let's see -- Joris

5  Ray and then interim -- tell me, Ms. Morton.  You're here.

6      **MS. MORTON:**  Yes, Your Honor.  Yes, we had

7  Dr. Joris Ray, and then we had Interim Superintendent

8  Tunonial Williams, and then we had Marie Feagins, and now we

9  have Dr. Robert [sic] Richmond.

10      **THE COURT:**  All right.  Dr. Roderick Richmond.

11      Okay.  The docket number is 2:21-2110.

12      And for Barton Thorne, Dean McGee is here.  Thank

13  you.

14      And via telephone, we've got Cameron Watson and

15  Bridget Conlan.  And can you hear me all right?

16      **MS. CONLAN:**  Yes.

17      **MR. WATSON:**  Yes, Your Honor.

18      **THE COURT:**  Okay.  Thank you.

19      And then, of course, for the defendants, Jamie

20  Morton is here.

21      **MS. MORTON:**  Your Honor, while I'm -- we're on

22  counsel, would it be okay for me to raise one issue?

23      **THE COURT:**  Sure.

24      **MS. MORTON:**  Okay.  Seems like the right time to

25  raise it.

*UNREDACTED TRANSCRIPT*

1          I am sure that counsel is going to file the pro

2   hac vice motions, but at this point, we've got two

3   out-of-state counsel, and I have not seen any pro hac vice

4   motions.  Mr. Suhr was admitted years ago, but I'm not sure

5   that either of the outside counsel -- the out-of-state

6   counsel have submitted those.  So I just want to make sure

7   all stay by the book and according to the rules.

8          **THE COURT:**  Thank you very much.  No, that's --

9   that's very important.  I was unaware of that.

10          **MR. McGEE:**  And Your Honor, it certainly was not

11   my intent, and I believe I -- I believe I had worked that out

12   with my office, and I believe that motion is filed.  If not,

13   that's --

14          **MS CONLAN:**  Your Honor, it's because we actually

15   were admitted fully to this district court.  We are -- so we

16   do not need a pro hac admission because we're just fully

17   admitted.

18          **THE COURT:**  All right.  So that's Ms. Conlan

19   speaking, right?

20          **MS. CONLAN:**  Yeah.  So this district court

21   actually allows admissions for attorneys from other states.

22          **THE COURT:**  I'll have to look and see if that's

23   correct.  I just don't know, as I look at the docket sheet

24   here -- I'm not fast enough on the mouse to find it.  But

25   let's understand that that's the case, Ms. Morton.  And if

*UNREDACTED TRANSCRIPT*

```
 1    not, we'll have to deal with it separately.

 2              All right.  Thank you, Ms. Conlan.

 3              So we're here on the motion for status

 4    conference, motion to set a Rule 16 conference that was filed

 5    January 28th of 2025.  It's at ECF 49.  And I'm going to

 6    begin by asking Plaintiff's counsel to address whatever is on

 7    Plaintiff's mind, and then we'll allow Ms. Morton to respond

 8    and see where we are.

 9              MR. McGEE:  Thank you, Your Honor.

10              THE COURT:  Thank you, Mr. McGee.

11              MR. McGEE:  Your Honor has certainly had this

12    case longer than I have.  I've had it about two weeks.  I

13    know Your Honor has had it for well over four years or around

14    four years.  So -- but my predecessor, Mr. Dougherty, filed

15    this motion, say, for two primary reasons:  One, with the

16    desire to substitute in the proper counsel, the current --

17    the proper defendant -- pardon me -- the current

18    superintendent of Shelby County Schools.  But I think more

19    importantly, with the new administration, with a new

20    superintendent, the hope that this would be an opportunity to

21    revisit mediation before this court, perhaps before a

22    magistrate.

23              Ms. Morton has only had it, I think, since -- you

24    know, for the last ten minutes or so, but I did send her a

25    revised settlement proposal this morning that is, from my
```

*UNREDACTED TRANSCRIPT*

1   understanding looking at the notes, substantially different

2   and I hope more favorable for the district than prior

3   counsel's, because my client certainly does want to resolve

4   this, if that's feasible.  So those are the two primary

5   issues before the Court.

6           **THE COURT:**  All right.  Ms. Morton?

7           **MS. MORTON:**  My understanding is that Your Honor

8   did actually grant the status conference, so here we are.

9           As far as switching the name of the

10  superintendent, I think it's superfluous that it's on there

11  at all, but I have no objection to having the Court update

12  that in the style of the case.

13          **THE COURT:**  Okay.  Then that will be done.  We'll

14  let the record so reflect.

15          **MS. MORTON:**  As far as the mediation, as you

16  know, Your Honor, I've been on this case since its inception.

17  And I do not believe that another mediation would be

18  fruitful, notwithstanding the change of administration,

19  because primarily of the strength that my client sees in the

20  legal arguments that were outlined in the 12(b)(6) motion.

21  At this point, we would like to, you know, have that ruled

22  upon and proceed in however we need to do that, if it's

23  appealed or whatever happens.  But I really believe that this

24  case has been pending for a long time.

25          We've tried mediating it.  There aren't really

*UNREDACTED TRANSCRIPT*

1    disputed facts, and so the issue is just whether there's a

2    claim or not, and we feel strongly that there is not.  And so

3    prior to any resolution of that motion or subsequent motion

4    to -- for summary judgment, I think it would be difficult to

5    reach any sort of resolution in mediation.

6                    **THE COURT:**  I see.

7                **MR. McGEE:**  May I respond, Your Honor?

8                    **THE COURT:**  Yes, please.

9                **MR. McGEE:**  Just two brief points:  One, again, I

10   did send a revised settlement proposal today, and so I would

11   just ask that obviously it be provided to the current

12   administration, the current decision makers at the school,

13   and that it be given due consideration.

14                    As to the issue of undisputed facts, I do think

15   the core facts are undisputed, but there are certainly facts

16   that we believe we're entitled to explore in discovery,

17   particularly as they relate to the -- the investigation, you

18   know, that they claim to have done.

19                    Now, I do understand that Your Honor did set an

20   initial discovery schedule in this case.  And as I review the

21   file, it appears paper discovery was done, and Defendants --

22   pardon me -- Plaintiff's deposition was taken.

23                    I would ask for permission to take discovery --

24   to take depositions of the defendants.  I understand there

25   was an original scheduling order set, but certainly, if

*UNREDACTED TRANSCRIPT*

1  the -- you know, I'd like to proceed, or if it makes more

2  sense to wait until the motion is ruled on, if the motion is

3  denied or denied in part, that is something I would like to

4  proceed with.

5         **THE COURT:** Okay. I understand. And I think you

6  said you may have had this case for two weeks?

7         **MR. McGEE:** That's correct, Your Honor.

8         **THE COURT:** And the rest of us have had it for a

9  number of years. And I don't need to go into it, but there

10 are a number of reasons for that, which, from the Court's

11 perspective, include the turnover of administrations.

12        And I wasn't clear on the plaintiff's position in

13 terms of whether he wished to vigorously proceed with the

14 case. I understand he's still the principal at Cordova.

15        **MR. McGEE:** That's correct, Your Honor.

16        **THE COURT:** All right. And I have inquired,

17 during a previous setting, as to whether he had applied for

18 employment elsewhere, and counsel responded that he thought

19 he had. But there was -- I think that was Mr. Suhr. There

20 was no further elaboration upon, yes, he's applied and was

21 turned down because -- because of this pending matter or any

22 such. I didn't hear anything more, and I didn't know, you

23 know, what his -- I -- was preference was but what his

24 position was in terms of going forward.

25        I'm glad to hear that another settlement proposal

*UNREDACTED TRANSCRIPT*

```
 1  has been offered, and I don't need to get into the middle of

 2  that, but perhaps one of our magistrate judges might.  Do

 3  y'all have any preference, if we were to go that route, as to

 4  which magistrate judge?  I know Ms. Morton probably hadn't

 5  even thought about it because she can't even imagine that

 6  would come to pass.

 7          MS. MORTON:  Preference as to which magistrate

 8  judge, I have not thought about it.  I cannot think of one as

 9  I stand here right now, Your Honor, but I have not given that

10  thought.

11          THE COURT:  All right.

12          MR. McGEE:  I'd defer to my colleague,

13  Mr. Watson, on the phone for that answer.

14          THE COURT:  Have you given it any thought,

15  Mr. Watson?

16          MR. WATSON:  Your Honor, I have not thought about

17  what magistrate judge I would pick, but I think that's

18  something that, you know, if Your Honor allows -- I think we

19  can get with Jamie and kind of sort out what we think would

20  be the best one for this type of case.

21          THE COURT:  Well, if you -- you know, I value

22  your feedback on that, on the -- all right.  Then on the Rule

23  25 motion, as I said -- the motion to substitute Dr. Roderick

24  Richmond in his official capacity as the interim

25  superintendent; that he be substituted for Dr. Joris Ray --
```

*UNREDACTED TRANSCRIPT*

1    is granted, and the -- the record will so reflect.

2              As to the defendant's motion to dismiss the

3    amended complaint with prejudice, pursuant to Federal Rule of

4    Civil Procedure 12(b)(6) that was filed back at ECF 15, I've

5    carefully considered the parties' arguments.  And accepting

6    the facts as alleged in the amended complaint as true and

7    construing the complaint in the light most favorable to the

8    plaintiff, as I'm required to do, I find that the amended

9    complaint's factual allegations are sufficient to state

10   facially plausible claims for violation of Plaintiff's due

11   process and First Amendment rights, and therefore,

12   Defendant's motion to dismiss is denied.

13             There's also a pending motion to take judicial

14   notice.  Again, I've carefully considered the parties'

15   arguments, and that motion is denied.

16             I pause to digress.

17             In considering the motion as originally filed to

18   take judicial notice concerning events surrounding Joris Ray,

19   we were quickly overcome by events because then the question

20   will be, well, should we also consider events surrounding the

21   appearance and departure of the next superintendent and so on

22   and so on and so forth.  And I think there were -- think

23   there was a director of human resources.  I think there were

24   other employees who may have had some involvement in this

25   same case who also have -- are no longer employed there for

*UNREDACTED TRANSCRIPT*

12

 1    various reasons.  And aside from being inappropriate, if it

 2    had been appropriate, I'm not sure where it would ever end in

 3    this saga, but not appropriate for judicial notice.

 4             I note that Plaintiff said he might want to

 5    otherwise amend to include additional facts that he wished

 6    the Court to take notice of.  That's possible; although, you

 7    would subject yourself to additional motion practice by

 8    Defendants if you follow that course, but that's up to you to

 9    decide.

10             And so given the status of the case now, I think

11    a judicial settlement conference with one of our talented

12    magistrate judges would be appropriate.  And Rule 16.3

13    generally provides that the parties can request, as you have,

14    after you've engaged in one failed attempt, which you did --

15    you didn't, but your predecessor did.  So it may be hard to

16    choose.  You-all confer as to whether you have a preference,

17    and you-all haven't seemed to be able to agree on much of

18    anything over the years, and we'll wait and see what happens.

19    But I'll be happy to just appoint somebody to handle it.

20             And I hope you will pursue it in earnest.  I know

21    Ms. Morton's position on a number of issues.  I thought of

22    bringing out a cart that I have in chambers with this file

23    because it consumes the cart.  And there are -- there are

24    some -- some particular issues that are vexatious to the

25    Court here, as well as the fact that the law has continued to

*UNREDACTED  TRANSCRIPT*

1    be refined and clarified on certain issues by -- even by the

2    United States Supreme Court, where presumptions that parties

3    may have presumed to apply years ago no longer do so in the

4    same -- in the same way.

5                One of the issues before your appearance,

6    Mr. McGee, was whether there was an adverse employment action

7    here.  And both Ms. Morton and -- what was his name?  Walker?

8                **MS. MORTON:**  Kenneth Walker, yes.

9                **THE COURT:**  Is he gone, too?

10               **MS. MORTON:**  He is.  He is general counsel for

11   Austin Unified School District.

12               **THE COURT:**  Austin?

13               **MS. MORTON:**  Uh-huh.

14               **THE COURT:**  I'll be darn.

15               And what about Odell Horton, Jr.?  Was he not

16   general counsel?

17               **MS. MORTON:**  He was, and we've had -- Mr. Justin

18   Bailey replaced him in April, I believe.  He's coming on

19   about a year.

20               **THE COURT:**  So there are lots of new faces.

21   You're the tie that binds.  You're the common denominator.

22               **MS. MORTON:**  It's been a tough couple of years,

23   Your Honor.

24               **THE COURT:**  Last lawyer standing.

25               Well, the issue of whether this was an adverse

*UNREDACTED TRANSCRIPT*

1    employment action, whether Barton Thorne was suspended, I

2    guess, I can still hear Mr. Walker saying, "Oh, he wasn't

3    suspended.  He wasn't suspended."

4            And it's troublesome to look at the school

5    board's own manual and the state law and the state

6    regulations that say to the contrary.  And it's just

7    something you need to be able to explain for this court.

8            "Suspension" means the temporary removal of an

9    educator from his or her regular duties with or without pay.

10            And then what a school is supposed to do, under

11    Rule 0520-02-03-.09:  Suspension includes the placement of an

12    educator or administrator on leave, pending investigation

13    into allegations of misconduct.

14            Never been able to quite understand the school's

15    position on that, and it's troublesome to me.

16            **MS. MORTON:**  I understand, Your Honor.  I

17    think -- I think I can address it at least generally.  I

18    assume the Court is reading from the Teacher Tenure Act?

19            **THE COURT:**  Well, I think these rules were

20    promulgated pursuant thereto.  I mean, I've got them right

21    here.  They're yellow now because ever since you told me

22    otherwise, I've left them open on my desk in chambers, as

23    what's turned into virtually a constant reminder of the

24    question I have.

25            Are you saying they don't apply to the Shelby

*UNREDACTED TRANSCRIPT*

1    County Schools?

2           **MS. MORTON:**  No.  No.  So under state law, under

3    the Teacher Tenure Act, is -- that's the policy manual?  Is

4    that what it is?

5           **THE COURT:**  Oh, I have your policy manual.

6           **MS. MORTON:**  Okay.

7           **THE COURT:**  What's called -- no, it's called

8    Shelby County Schools Employee Handbook.

9           **MS. MORTON:**  Okay.  Got it, the employee hand --

10   okay.

11          **THE COURT:**  Is there -- is there something

12   different?  Is there a policy manual?

13          **MS. MORTON:**  Yes.

14          **THE COURT:**  Oh, so there's a difference in

15   terminology?

16          **MS. MORTON:**  Well, I don't know that -- what I

17   want to do is go to the law.

18          **THE COURT:**  That'd be a good place to --

19          **MS. MORTON:**  Right.  So under the Teacher Tenure

20   Act, that's -- that's stating what's in the law.  And the

21   superintendent, not the board -- so the board usually has to

22   take action, any adverse employment action specifically

23   related to a tenured teacher; that has to be done by the

24   board.  But the statute does specifically allow the director

25   of schools, the superintendent, to do a paid suspension,

*UNREDACTED TRANSCRIPT*

pending the outcome of investigation, which is exactly what
we did.  So my --

                **THE COURT:**  Suspension.  Suspension.

                **MS. MORTON:**  I don't think it matters whether we
call it a suspension or -- or administrative leave.

                **THE COURT:**  It might.

                **MS. MORTON:**  I think -- I think the Tennessee law
gave us the right to do it so that we could conduct an
investigation.  And because the statements that Principal
Thorne made were unquestionably in his authority and his role
as principal, he had no First Amendment rights with respect
to anything.  So the First Amendment doesn't change the fact
that state law gives the superintendent the right to put an
educator on leave while investigating allegations against
him.

                **THE COURT:**  Something to think about.

                All right.  Is there anything else?

                **MS. MORTON:**  I just wanted to, if I may, respond
to the idea that we might need to reopen discovery in this
case.  I just want to point out to the Court that the
plaintiffs did take discovery.  They may have chosen to only
take written discovery, but there was ample time to do that.
We took two depositions.  We took the deposition of the
plaintiff.  We also took the deposition of the plaintiff's
proposed expert.  Plaintiff had not only counsel from Liberty

*UNREDACTED TRANSCRIPT*

```
 1   Justice Center but also local counsel at the time, and I
 2   certainly had not heard any explanation for why, after all
 3   this time, discovery should be reopened.
 4              THE COURT:  It's a familiar --
 5              MR. WATSON:  Your Honor, Cam Watson here.
 6   I've --
 7              THE COURT:  Yes, Mr. Watson.  Yes, sir.
 8              MR. WATSON:  -- been around the entire time.
 9              I can speak to this.  But from my understanding
10   from the last status conference we had, which has been quite
11   a long time because we were waiting on a ruling on the motion
12   to determine the scope of discovery, I thought that was an
13   agreed-to thing, but I could be incorrect on that.
14              But I believe Daniel Suhr had told me that, and I
15   was -- kind of my understanding that we were waiting on that
16   motion to be ruled on because obviously if the scope of the
17   complaint was changed, that would change the course of
18   discovery.
19              THE COURT:  Ms. Morton?
20              MS. MORTON:  I disagree with that.  Certainly
21   there was no agreement.
22              Discovery proceeded just as it would have, so
23   Plaintiff did not raise, at the time, that there was a
24   question about what the scope of discovery would be.  We took
25   the deposition of an expert, so we certainly took our
```

*UNREDACTED TRANSCRIPT*

1    discovery as though the case was going to continue, and I

2    think that's generally what parties are expected to do.  So

3    we certainly have not ever agreed to the concept of reopening

4    discovery based on the outcome of the motion to dismiss.

5              Discovery is closed.  We -- this -- summary

6    judgment deadline even passed, and that had to be extended.

7    But there's not been any discussion about continuing to have

8    discovery open or reopen, based on my recollection.

9              **MR. WATSON:**  I'm primarily a defense attorney,

10   Your Honor, so typically when I file a 12(b)(6) motion -- and

11   I think the case law speaks to this as well -- but discovery

12   does not typically go forward when a 12(b)(6) motion is

13   pending.  When it does go forward, it's usually limited

14   scope.  So, again, I kind of shared my understanding, but

15   obviously we'll defer to the Court on what the Court thinks

16   best.

17             **THE COURT:**  I'll handle it.

18             So under the Teacher Tenure Act, states what's

19   the lawsuit.  And the superintendent, not the board -- so the

20   board usually has to take action, any adverse employment

21   action specifically related to a teacher.  The statute does

22   specifically allow the director of schools, the

23   superintendent, to do a paid suspension, which is exactly

24   what we did.

25             Is that your position?

*UNREDACTED TRANSCRIPT*

1          **MS. MORTON:**  I do not think the nomenclature is

2    to whether or not it's a suspension.  I think the -- I think

3    the words are not as significant as the fact that he was put

4    on -- I mean, that's the purpose of that, a type of

5    suspension.

6          So the legislature calls it "suspension" when

7    you're putting somebody on leave so that you can investigate

8    the situation.  There are lots of reasons to take somebody

9    out of the environment while you're doing an investigation.

10   An employment investigation in the case law certainly

11   supports the idea that that's a normal and part of that

12   process.  So whether we call it a suspension or

13   administrative leave, which is what we call it, it's still

14   lawful.  We're still permitted to do it.

15         And in the case of -- let's say that we had put

16   him on unpaid leave and that constituted an unpaid suspension

17   under the tenure act, and then he had a hearing under the

18   tenure act -- that's not what these claims are, obviously,

19   but if it was, then he would have the hearing.  And if the --

20   if the teacher is vindicated from the hearing -- so, no,

21   whatever it was, you didn't do anything wrong -- we got to go

22   back and pay them all that money.

23         So that's all in the tenure act.  So whether we

24   call it a suspension or administrative leave, we never took

25   any pay away.  We simply had to have time to figure out what

*UNREDACTED TRANSCRIPT*

happened and to analyze the complaints that were made and the

statements that Mr. Thorne made to a captive audience of

seniors in high school.

**THE COURT:**  I just remember Mr. Walker telling

the Court emphatically, back in August of '22, quote, it's

not a suspension; it's simply paid administrative leave while

an investigation of employee complaints are being conducted,

unquote.

But back to where we began.  If it is a

suspension, as state law says it is, despite Mr. Walker's

assertion to the contrary, aren't there other requirements

that need to be followed in terms of notifying the state, and

were those followed here?

**MS. MORTON:**  I don't know the answer.  I don't

know if those were asked for in discovery.  There are certain

allegations, not all of them, but certain allegations that if

any educator is accused of -- so let's say child abuse.

Let's say physical abuse of a student, and there's other --

other ones as well.  If you're accused of certain types of

misconduct, there is a state board of education report that

is due.  There's an initial report that's done, just

notifying them of the suspension, and then there is a later

report that's done, a final director's report that's done, to

let the state know what ultimately happened with the

investigation.  And so that's so that the state board can

*UNREDACTED TRANSCRIPT*

1    investigate whether that educator gets to keep their license

2    or not.  It's not a due process.  It's not part of due

3    process or anything like that.

4            But I don't want to speak for Mr. Walker.  He was

5    my boss at the time, and I'm not sure what exactly he meant.

6            **THE COURT:**  Co-counsel.  Is he withdrawn from the

7    case?

8            **MS. MORTON:**  Yes.  Yes, Your Honor.

9            But what I would say is that when we're talking

10   about suspension, suspension, suspension, and certainly when

11   we look at the case law and they talk about suspensions --

12   when we look at those individual cases, they're talking about

13   disciplinary suspensions, not investigative suspensions.  I

14   think that's maybe where the confusion is, is that,

15   colloquially, I think we think of suspensions as you're in

16   trouble, and this happened because -- for a disciplinary

17   reason, you're getting a suspension.  And, colloquially,

18   leave is simply that; you're not going to be working while

19   we're working on the investigation.

20           But under the state statute, yes, it does call

21   that a suspension.  I would speculate that my former

22   co-counsel intended to say that it was not discipline but

23   simply investigative.

24           **THE COURT:**  Mr. McGee?

25           **MR. McGEE:**  Your Honor, we do view it as a

*UNREDACTED TRANSCRIPT*

1   suspension.  We do view it -- especially viewed in the

2   context of the length and the implications of misdoing

3   arising from the length, we do view both as a suspension and

4   an adverse employment action.

5           And I just wanted to touch on the issue of

6   discovery.  I don't intend to go on a fishing expedition with

7   depositions.  I would like more clarity as to the

8   investigation that was conducted because I know that is key

9   to the school's defense.  And I would intend to keep it

10  focused limited, not to depose more people than I need to.

11          And, candidly, as I mentioned, I've only had this

12  case for two weeks, and I do believe my client would be

13  prejudiced if he's not able to take some depositions before

14  we move forward with this case.

15          **THE COURT:**  Well, if you would be kind enough to

16  put that in writing, the motion to reopen, it will help for

17  the rather voluminous record.

18          **MR. McGEE:**  Yes, Your Honor, will do.

19          **THE COURT:**  All right.  Thank you.  Thank you.

20          Well, if there's nothing further, Ms. Morton has

21  another matter, but that's not for another half hour.

22          Anything further in this case?

23          **MR. McGEE:**  No, Your Honor, unless my co-counsel

24  have anything to add.

25          **THE COURT:**  Co-counsel?

*UNREDACTED TRANSCRIPT*

1        **MR. WATSON:**  And nothing here, Your Honor.

2        **THE COURT:**  All right.  Thank you.  Thank you-all

3    very much.

4        **MR. McGEE:**  Thank you.

5        **MS. MORTON:**  Thank you, Your Honor.

6

7

8        (Proceedings concluded at time 10:26 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*UNREDACTED TRANSCRIPT*

# C E R T I F I C A T E

1

2

3

4          I, LASHAWN MARSHALL, RPR, RMR, do hereby certify

5  that the foregoing 23 pages are, to the best of my knowledge,

6  skill and abilities, a true and accurate transcript from my

7  stenotype notes of the STATUS CONFERENCE on the 11th day of

8  April, 2025, in the matter of:

9

10

11

12  BARTON THORNE

13  vs.

14  SHELBY COUNTY BOARD OF EDUCATION and DR. JORIS M. RAY, in his

15  official capacity as Superintendent of Shelby County Schools,

16

17

18  Dated this 21st day of April, 2025,

19

20

21          *S/Lashawn Marshall*

22          Lashawn Marshall, RPR, RMR
            Official Court Reporter
23          United States District Court
            Western District of Tennessee

24

25

*UNREDACTED TRANSCRIPT*